IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WE-FLEX, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-1078 |
| | § | |
| NBSP, INC., PEARLESSENCE | § | |
| LIMITED, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION**

Pending before the court[1] are Defendant Pearlessence Limited's ("Pearlessence") Motion to Dismiss Plaintiff's First Amended Complaint or, Alternatively, for Summary Judgment (Doc. 51), Defendant NBSP, Inc.'s ("NBSP") Motion to Dismiss Plaintiff's First Amended Complaint (Doc. 54), and Plaintiff's Motion to Postpone Consideration of Pearlessence's Motion for Summary Judgment (Doc. 56).

The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **GRANTS** both motions to dismiss. Pearlessence's alternative motion for summary judgment and Plaintiff's motion for postpone consideration of the summary judgment motion are **DENIED AS MOOT**.

**I. Case Background**

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Doc. 60.

Plaintiff filed this complaint for false patent marking against alleged competitors, Pearlessence and NBSP.[2]

Plaintiff designs and sells novelty items, including "specialty shaped suction cups and various aromatic items including suction cups."[3] Included among Plaintiff's patents are a presentation board with suction cups for mounting, vacuum-actuated display ornaments, and scented suction cups.[4] Plaintiff has filed numerous other patent applications since 1994.[5] Plaintiff marks its products as "patent pending" or "patented" when patent applications are pending or are patented, respectively.[6]

NBSP also sells scented suction cups and, since 2008 or earlier, has marked at least two of its products as "patent pending."[7] Under the brand name "Polet," NBSP marks similar products as "patent pending."[8] According to Plaintiff's complaint, no patent application has ever been pending for these products.[9]

Pearlessence sells scented suction cups as well, marking

---

[2] Plaintiff originally named two other defendants but has since dismissed both. See Doc. 1, Pl.'s Original Compl.; Doc. 3, Notice of Dismissal; Doc. 5, Order of Dismissal Dated Apr. 18, 2011; Doc. 40, Stipulation of Dismissal; Doc. 41, Order of Dismissal Dated Sept. 30, 2011.

[3] Doc. 49, Pl.'s 1st Am. Compl., p. 3.

[4] Id.

[5] Id. at p. 4.

[6] Id.

[7] Id. at pp. 5, 6, 8.

[8] Id. at p. 6.

[9] Id. at p. 7.

several products as "patent pending."[10] However, between June 2009 and November 2011, no patent application for any of these products was pending.[11] Pearlessence held patents on two unrelated products and had filed three provisional patent applications, two of which expired in 2009.[12]

Beginning in 2009, Plaintiff and Pearlessence discussed potential business dealings, including a partnership.[13] When Plaintiff questioned Pearlessence's president about the "patent pending" markings, he stated that Pearlessence had filed a utility patent for the fragrance polymer attached to the suction cup, but Plaintiff was unable to locate any such application.[14]

Plaintiff filed this action on March 23, 2011.[15] Pearlessence and NBSP filed motions to dismiss in July and August 2011.[16] Effective September 16, 2011, Congress amended 35 U.S.C. § 292 ("False Marking Statute"),[17] the statute pursuant to which Plaintiff had filed this case. The amendment removed the qui tam provision

---

[10] See id. at pp. 5, 7.

[11] Id. at p. 8.

[12] Id. at pp. 11, 12.

[13] Id. at p. 12.

[14] Id. at pp. 12-13.

[15] See Doc. 1, Pl.'s Orig. Compl.

[16] See Doc. 6, NBSP's Mot. to Dismiss Pl.'s Orig. Compl.; Doc. 19, Pearlessence's Mot. to Dismiss Pl's Orig. Compl.

[17] See Leahy-Smith Am. Invents Act, Pub.L. No. 112-29 § 16(b)(4), 125 Stat. 284, 329 (2011)(stating that it was effective as of the date of enactment, which was September 16, 2011).

of the False Marking Statute, now requiring proof that a plaintiff suffered a competitive injury.[18] The amendment applied immediately to all pending cases.[19]

After the statutory change, the court held a scheduling conference at which Plaintiff failed to appear.[20] The court attempted to reach Plaintiff's counsel by telephone to no avail.[21] At the hearing, the court noted the change in the law and, indicating a desire to hear from Plaintiff on the issue, ordered Plaintiff[22] to address its ability to maintain the lawsuit in a response to Pearlessence's reply, which argued for dismissal of the case based on the statutory change.[23] The court also responded favorably to NBSP's oral offer to file a brief stating its position on how the statutory change affected Plaintiff's lawsuit.[24]

NBSP filed its brief as a supplemental motion to dismiss on September 29, 2011.[25] Plaintiff filed a surreply to Pearlessence's motion simultaneously with a motion for leave to amend its

---

[18] See 35 U.S.C. § 292(b).

[19] See Leahy-Smith Am. Invents Act, Pub.L. No. 112-29 § 16(b)(4), 125 Stat. 284, 329 (2011).

[20] See Min. Entry Dated Sept. 21, 2011.

[21] See Recording of Scheduling Conference Dated Sept. 21, 2011.

[22] The court notified Plaintiff of this order via the minute entry from the scheduling conference. See Min. Entry Dated Sept. 21, 2011.

[23] Recording of Scheduling Conference Dated Sept. 21, 2011; Min. Entry Dated Sept. 21, 2011.

[24] Recording of Scheduling Conference Dated Sept. 21, 2011.

[25] See Doc. 39, NBSP's Supplemental Mot. to Dismiss.

complaint in order to conform with the new law.[26] Pearlessence and NBSP verbally opposed Plaintiff's motion for leave, but failed to file responses.[27] Just over a month after Plaintiff filed the motion, the court granted leave to amend.[28]

Pearlessence and NBSP filed a second round of motions to dismiss the amended complaint.[29] Pearlessence alternatively moved for summary judgment.[30] Plaintiff filed a motion for continuance of Pearlessence's motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56(d).[31]

Last month, the court denied the earlier motions to dismiss as moot in light of the court's order allowing Plaintiff to amend.[32] The court now addresses Pearlessence and NBSP's motions to dismiss the amended complaint.

## II. Plaintiff's Procedural Objections

Before addressing Pearlessence and NBSP's arguments, the court

---

[26] See Doc. 42, Pl.'s Mot. for Leave to Am.; Doc. 43, Pl's Surreply to Pearlessence's Mot. to Dismiss. Plaintiff also responded to NBSP's Supplemental Motion to Dismiss. See Doc. 46, Pl.'s Resp. in Opp'n to NBSP's Supplemental Mot. to Dismiss.

[27] See Doc. 42, Pl.'s Mot. for Leave to Am., p. 8 (noting Pearlessence and NBSP's opposition).

[28] See Doc. 48, Order Dated Nov. 4, 2011.

[29] See Doc. 51, Pearlessence's Mot. to Dismiss Pl.'s 1st Am. Compl. or, Alternatively, for Summ. J. ("Pearlessence's Mot."); Doc. 54, NBSP's Mot. to Dismiss Pl.'s 1st Am. Compl. ("NBSP's Mot.").

[30] See Doc. 51, Pearlessence's Mot.

[31] See Doc. 56, Pl.'s Rule 56(d) Mot. to Postpone Consideration of Pearlessence's Mot. for Summ. J.

[32] See Doc. 61, Mem. Op. Dated Mar. 26, 2012.

addresses Plaintiff's procedural objections. Plaintiff argues that Pearlessence and NBSP waived their Rule 12(b)(6) arguments by failing to respond to Plaintiff's motion for leave to amend and that, by allowing the amendment, the court "tacitly concluded" that Plaintiff's proposed amendments were not futile.

The court disagrees. At the hearing, the court made it clear that it intended to consider Pearlessence and NBSP's arguments regarding the effect of the statutory amendment on Plaintiff's case.[33] Plaintiff addressed the court's concerns in briefs and a motion for leave to amend. The court granted leave without addressing whether Plaintiff's amended complaint met the new standards for a false-marking case. The filing of opposition briefs to Plaintiff's motion for leave to amend would have been the proper procedure under the local rules but it was not necessary in this case because both Pearlessence and NBSP already had expressed their opinions on the effect of the statutory changes in recently filed briefs.

Additionally, Plaintiff overstates its burden on leave to amend, particularly in this case. Plaintiff claims that its motion for leave to amend established that amendment was not futile and the amended complaint was not subject to dismissal. However, the court reviewed the motion under Rule 15,[34] which directs the court

---

[33] See Recording of Scheduling Conference Dated Sept. 21, 2011.

[34] When Plaintiff sought leave to amend (and still to this date), no scheduling deadlines had been set.

to "freely give leave when justice so requires."

Here, an immediately effective statutory change warranted granting Plaintiff an opportunity to avoid dismissal by pleading facts that demonstrate it suffered a competitive injury. The court did not review Plaintiff's complaint for sufficiency of its pleading but exercised its discretion in allowing the amendment.

The (very dated) case cited by Plaintiff, DeLoach v. Woodley, 405 F.2d 496, 497 (5th Cir. 1968), does not instruct otherwise. There, the court opined that Rule 15(a) did not require court to "indulge in futile gestures," but, rather, allowed a court the discretion to deny leave to amend where the amended complaint would be subject to dismissal. Id. DeLoach does not stand for the proposition that a court insulates a complaint from dismissal by granting leave to amend. See id. In fact, the court's discretion in reviewing motions for leave to amend weighs more in favor of granting leave than in favor of denying it based on futility or any other reason. See U.S. ex rel. Steury v. Cardinal Health, Inc., 625 F.3d 262, 270 (5th Cir. 2010)(quoting State of La. v. Litton Mortg. Co., 50 F.3d 1298, 1302-03 (5th Cir. 1995), as stating that "[a] decision to grant leave is within the discretion of the court, although if the court lacks a substantial reason to deny leave, its discretion is not broad enough to permit denial").

The court finds that Pearlessence and NBSP did not waive their arguments by failing to file briefs in opposition to Plaintiff's

motion for leave to amend and that the court's decision to grant leave did not become law of the case on the sufficiency of Plaintiff's allegations or preclude Pearlessence and NBSP from filing motions to dismiss the amended complaint.

### III. Dismissal Standard

Dismissal of an action is appropriate whenever the court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1); 12(h)(3). Federal courts may exercise jurisdiction over cases only as authorized by the United States Constitution and the jurisdictional statutes. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994); see also Howery v. Allstate Ins. Co., 243 F.3d 912, 916 (5th Cir. 2001). Article III of the United States Constitution confines federal court jurisdiction to cases and controversies and, thus, requires that a plaintiff has standing to bring suit. See Time Warner Cable, Inc. v. Hudson, 667 F.3d 630, 635 (5th Cir. 2012). The party asserting jurisdiction bears the burden of overcoming the presumption that the cause falls outside the court's limited jurisdiction. Kokkonen, 511 U.S. at 377; see also Time Warner Cable, Inc., 667 F.3d at 635.

Pursuant to Rule 12(b)(6), dismissal of an action is appropriate whenever the complaint, on its face, fails to state a claim upon which relief can be granted. When considering a motion to dismiss, the court should construe the allegations in the complaint favorably to the pleader and accept as true all well-pled

facts. <u>Sullivan v. Leor Energy, LLC</u>, 600 F.3d 542, 546 (5th Cir. 2010).

A complaint need not contain "detailed factual allegations" but must include sufficient facts to indicate the facial plausibility of the claims asserted, raising the "right to relief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Plausibility means that the factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678. Although specifics are not necessary, a complaint must contain enough facts to nudge the claims "across the line from conceivable to plausible." <u>Twombly</u>, 550 U.S. at 570. In other words, the factual allegations must allow for an inference of "more than a sheer possibility that a defendant has acted unlawfully." <u>Iqbal</u>, 556 U.S. at 678.

### IV. Analysis

The False Marking Statute prohibits, among other things, falsely marking a product with the word "patent" when the article is unpatented or marking a product with "patent pending" when no application is pending. 35 U.S.C. § 292(a). The statute allows anyone who has suffered a competitive injury as a result of false marking to file a civil action for compensatory damages. 35 U.S.C. § 292(b). A plaintiff must plead facts in support of the existence

of a false patent marking that was intended to deceive the public and that caused the plaintiff competitive injury. See 35 U.S.C. § 292; Clontech Labs., Inc. v. Invitrogen Corp., 406 F.3d 1347, 1351 (Fed. Cir. 2005)(interpreting portions of the False Marking Statute that were unchanged by the 2011 amendment).[35]

The parties engage in a great deal of debate on a number of issues, including whether Plaintiff pled injury sufficient to satisfy the Constitution and the False Marking Statute.[36] Ignoring all other issues to address this issue, the court finds that Plaintiff's amended pleading fails to establish either constitutional or statutory standing. Absent standing, Plaintiff cannot pursue a false marking claim. As this finding alone warrants dismissal of the amended complaint, the court does not address the other issues.

Because constitutional standing is a jurisdictional matter,[37] the court begins there. See Brown v. Offshore Specialty Fabricators, Inc., 663 F.3d 759, 769 (5th Cir. 2011). In order to have constitutional standing to bring suit, the plaintiff must have

---

[35] The Federal Circuit has exclusive jurisdiction over appeals in civil actions arising under any statute relating to patents. 29 U.S.C. § 1295(a)(1).

[36] Other arguments raised by Pearlessence and NBSP are: Plaintiff failed to plead intent to deceive with particularity as required by Rule 9(b); Pearlessence did not violate the False Marking Statute because the marks were accurate, and it lacked intent to deceive the public; and Plaintiff failed to specify a damage amount. See generally Doc. 51, Pearlessence's Mot.; Doc. 54, NBSP's Mot. (incorporating prior motions).

[37] The court is required to examine subject matter jurisdiction, even if it had not been raised by the parties. See Fed. R. Civ. P. 12(h)(3).

10

sustained an injury in fact causally connected to the defendant's actions that can be redressed by a favorable court decision. <u>Time Warner Cable, Inc. v. Hudson</u>, 667 F.3d 630, 635 (5th Cir. 2012)(citing <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992)), <u>petition for cert. filed</u>.

"The injury-in-fact requirement helps ensure that courts resolve legal questions 'not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action.'" <u>Id.</u> at 636 (quoting <u>Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.</u>, 454 U.S. 464, 472 (1982)). The injury must be "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." <u>Lujan</u>, 504 U.S. at 560 (internal citations and quotation marks omitted). Moreover, the injury must be fairly traceable to complained-of conduct. <u>Id.</u>

Plaintiff asserts harm in two areas: goodwill and pricing.[38] Specifically, Plaintiff alleged the following in relation to both defendants:

> 42.[58.][39] By falsely (and unfairly) marking "patent pending" on [their] products, [Pearlessence and NBSP each] enjoys the recognition of being a creative innovator. By having products marked as being patented or patent pending, [Pearlessence and NBSP are] able to

---

[38] Doc. 49, Pl.'s 1st Am. Compl., ¶¶ 41, 57.

[39] The bracketed number is the complaint paragraph number directed at Pearlessence, while the other denotes the paragraph relating to NBSP.

11

distinguish [themselves] from companies seen as non-creative companies, lacking patent production.

43.[59.] Some of We-Flex's competitive injuries are unavoidably linked to competitive advantages improperly obtained by [Pearlessence and NBSP]. [Pearlessence and NBSP] enjoy[] goodwill that naturally flows from having a patent or patent application, but without having to actually expend resources toward the patenting process . . . . The goodwill that We-Flex properly deserves for having developed many innovative technologies regarding similar products (e.g., suction[] cups) is diminished, comparatively, because customers, including distributors (e.g., distributors of fragrant suction cups) and end purchasers do not see any distinction between We-Flex's products legitimately marked as "patent pending" and "patented" and [Pearlessence and NBSP's] product[s] illegitimately marked as such. Thus, [Pearlessence and NBSP's] false patent marking over the years has engendered an unfair advantage for [Pearlessence and NBSP], and a corresponding unfair disadvantage for We-Flex, in the marketplace.

44.[60.] [Pearlessence and NBSP's] false and misleading acts have impeded We-Flex's ability to distinguish its products from [Pearlessence and NBSP's] falsely-marked products in a competitive market of major players, such as Shell, S.C. Johnson, Glade, etc., and therefore inhibited We-Flex's ability to increase its goodwill and market share in the industry. . . .

45.[40] Moreover, because NBSP falsely marks it products, it does not have to exhaust its resources on the relatively[] high cost of filing and prosecuting a patent application. NBSP therefore falsely realizes the value of having a legitimate [] patent application without having to bear any of the costs that We-Flex bears in actually seeking patents. NBSP therefore has lower overhead costs. As a result, NBSP generally sells its products for less money than We-Flex and at a greater profit margin, which further diminishes We-Flex's goodwill and market share.

46.[63.] Conversely, as provided, We-Flex has spent

---

[40] Paragraph 61, which addresses Pearlessence, is substantively and conceptually identical with regard to the type of injury alleged but is more specific with regard to Pearlessence. See Doc. 49, Pl.'s 1st Am. Compl. For example, in place of "filing and prosecuting a patent application," paragraph 61 states, "having a patent application pending at all times for which their products are marked as 'patent pending' or of prosecuting utility patent applications for those products through to patent grant." Id. at ¶ 61.

12

> over three[] quarters of a million dollars on research, development, and intellectual property protection, including hundreds of thousands on patent applications. The amount companies spend in bringing a product to market including cost of seeking a patent, if any, unavoidably affects the price of the product.
> 47.[64.] Unless [Pearlessence and NBSP] cease[] falsely marking [their] articles, We-Flex will continue to suffer competitive harm and its interests in furthering technological progress in the useful arts will be further impaired.[41]

Plaintiff also includes the following paragraph directed solely at Pearlessence:

> 62. In a face-to-face meeting between Mr. Sheffield [representative of Plaintiff] and Mr. Wagenheim [representative of Pearlessence], among others, Mr. Wagenheim advised of the highly[] beneficial arrangement Pearlessence has garnered with i[t]s suppliers and that "there is no way you guys can touch that." The respect afforded Pearlessence products, the deals they can obtain with suppliers, as well as the cost they can charge are related to their marking their products as "patent pending," which was improper since at least April 2009.[42]

On first blush, Plaintiff's allegations of injury appear to have some substance. After all, diminished goodwill and loss of sales due to comparatively higher prices may satisfy the injury-in-fact requirement if those injuries are actual, not hypothetical, and are traceable to Pearlessence and NBSP's patent marking. The problem from Plaintiff is that, on closer examination, his allegations fail both conditions. The court walks through each allegation.

Plaintiff alleges that, in marking their products with "patent

---

[41]   Id. at ¶¶ 42-47, 58-60, 63-64.

[42]   Id. at ¶ 62.

13

pending" Pearlessence and NBSP enjoy the recognition of being creative innovators and distinguish themselves from companies lacking patent production. According to Plaintiff, Pearlessence and NBSP receive increased goodwill as a result. Even assuming the truth of those statements, they have everything to do with benefits redounding to Pearlessence and NBSP and nothing to do with injury to Plaintiff.

Paragraphs 44, 45, 60, and 61 all state the same thing: that the goodwill afforded Plaintiff is diminished in comparison to Pearlessence and NBSP because of Plaintiff's inability to distinguish its legitimately marked products from Pearlessence and NBSP's falsely marked products, resulting in an unfair disadvantage to Plaintiff. As a result, Plaintiff alleges, it has been unable to increase its goodwill and market share. These statements occupy the rarified air of theoretical or hypothetical injury. Plaintiff points to no particularized facts indicating ways in which it has actually suffered any diminished goodwill.[43] Plaintiff cannot establish injury by merely mentioning the names of several "major players" and alluding to customer confusion without any factual indication that anyone actually has demonstrated or acted on a sense of diminished goodwill toward Plaintiff.

Plaintiff further contends that, because Pearlessence and NBSP

---

[43] The court also notes that Plaintiff offers no facts suggesting the plausibility of an inference that it suffered any economic loss as a result of the alleged diminished goodwill.

14

avoided the cost of patent prosecution, they sell their products for less money than Plaintiff. And Plaintiff suffers diminished good will and market share, the complaint claims. Yet, Plaintiff offers no specific instances of either price comparison or of resulting lost sales. This assertion is at best theoretical and at worst speculative.

Neither Plaintiff's averment of the amount of money it has spent on research, development, and patent prosecution nor its allegation that Pearlessence bragged of a superior relationship with its suppliers is factually connected in Plaintiff's amended complaint to Pearlessence or NBSP's patent markings. All Plaintiff offers is bald assertions. Those allegations are therefore irrelevant.

In order for the court to find that Plaintiff has shown constitutional standing, the complaint needs to provide actual instances of cognizable injury, not just a list of potential harms, as well as facts suggesting that the harm claimed was a result of false marking. As far as the court can tell from Plaintiff's complaint, it suffered no actual damage.[44] Therefore, Plaintiff's cause of action should be dismissed for lack of subject matter jurisdiction.

Alternatively, even if Plaintiff's complaint could be said to

---

[44] Plaintiff correctly notes that it is not required to allege a specific amount of damages. Cf. Fed. R. Civ. P. 8(a)(3)(requiring only a demand for the relief sought).

15

meet the constitutional minimum for standing, it does not satisfy the statutory requirement of competitive injury.[45] Very few courts have had the opportunity since the 2011 amendment of the False Marking Statute to address the new injury requirement. However, the term is amenable to a plain reading, which is supported by the legislative history.

A "competitive injury" is "[a] wrongful economic loss caused by a commercial rival, such as the loss of sales due to unfair competition; a disadvantage in a plaintiff's ability to compete with a defendant, caused by the defendant's unfair competition." Black's Law Dictionary (9th ed. 2009). One of the sponsors of the 2011 amendment indicated that the injury requirement was intended to curtail the false-marking litigation "while still allowing parties who have separate actual injury from false marking to sue." 157 Cong. Rec. S5319-03, at S5321 (daily ed. Sept. 6, 2011)(statement of Sen. Jon Kyl).

Plaintiff must allege sufficient facts to plausibly establish that Pearlessence and NBSP's alleged false markings impaired Plaintiff's ability to compete with them in the market of similar products, which resulted in tangible economic loss. See Fisher-Price, Inc. v. Kids II, Inc., No. 10-CV-00988A(F), 2011 WL 6409665,

---

[45] Plaintiff claims that it is a direct competitor of each defendant because "Defendants sell and advertise scented suction cups similar to those [Plaintiff] sells." Doc. 49, Pl.'s 1st Am. Compl., ¶ 21. Pearlessence and NBSP do not concede this point, but the court assumes, for purposes of this motion, that the allegation is sufficient to withstand a Rule 12(b)(6) motion.

at *9 (W.D.N.Y. Dec. 21, 2011)(slip copy).⁴⁶ Plaintiff's amended complaint fails to do this for the same reasons it fails to establish constitutional standing. As the court "need not indulge in unwarranted inferences," it finds Plaintiff has failed to provide sufficient particularized facts to support either constitutional or statutory standing. See Juniper Networks, Inc. v. Shipley, 643 F.3d 1346, 1352 (Fed. Cir. 2011).

The court should dismiss this action rather than allow Plaintiff another opportunity to amend. Plaintiff attempted amendment after the change in the False Marking Statute with full knowledge of Pearlessence and NBSP's specific challenge to standing based on the injury requirement. Yet, Plaintiff failed to cure the complaint's deficiencies. Nothing in the records suggests to the court that, given another opportunity, Plaintiff could assert factual allegations that it actually sustained any injury as a result of Pearlessence and NBSP's patent markings.

Pearlessence and NBSP seek attorneys' fees against Plaintiff. Neither cite legal authority pursuant to which the court should opt

---

⁴⁶ The United States District Court for the Northern District of Illinois concluded that a plaintiff successfully pled a competitive injury by stating that the alleged "false marking '[was] likely to, or at least ha[d] the tendency to, discourage and deter persons and companies, such as K International, from commercializing competing products and deter[ed] consumers from using competing products.'" Fasteners for Retail, Inc. v. Andersen, No. 11 C 2164, 2011 WL 5130445, at *6 (N.D. Ill. Oct. 28, 2011)(quoting the allegations). This court disagrees with the Illinois court's decision because the allegations do not assert cognizable injuries but, rather, potential injuries. In its analysis, the Illinois court did not give meaning to the full term "competitive injury." The fact that the parties are in competition and may suffer an injury is not enough to satisfy the new statutory requirement; an injury is necessary.

not to follow the American Rule. Pearlessence also seeks sanctions against Plaintiff for the bad faith filing and prosecution of a frivolous lawsuit. Pearlessence alleges several factual bases for imposing sanctions but cites no legal basis.

Neither party succeeds in showing that Plaintiff lacked a legitimate basis for filing this suit. Plaintiff, on the other hand, recounts its efforts in searching for a pending patent application. Plaintiff's ultimate failure to plead standing is reason for dismissal but not reason, on its own, for awarding attorneys' fees and/or sanctions. The court **DENIES** the Pearlessence and NBSP's requests.

## V. Conclusion

Based on the foregoing, the court **GRANTS** both defendants' motions to dismiss Plaintiff's amended complaint. Pearlessence's alternative motion for summary judgment and Plaintiff's motion for continuance are **DENIED AS MOOT**.

**SIGNED** in Houston, Texas, this 25th day of April, 2012.

Nancy K. Johnson
United States Magistrate Judge